UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOE BROWN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 17-6332** |
| **ROBERT TANNER (WARDEN)** | **SECTION "G"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual and Procedural Background

The petitioner, Joe Brown, ("Brown") is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2]  On November 21, 2007, Brown was charged by Bill of Information in St. James Parish with three counts of armed robbery with a firearm.[3]  Brown entered a plea of not guilty on December 10, 2007.[4]

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 6, Bill of Information, 11/21/07. Brown apparently was charged by separate Bills of Information with a firearm enhancement and as a convicted felon in possession of a weapon. St. Rec. Vol. Motion to Consolidate, 8/11/08; Minute Entry, 8/11/08. While these bills and additional counts were consolidated for prosecution, they were not specifically part of the jury verdict at issue here.

[4] St. Rec. Vol. 1 of 6, Minute Entry, 12/10/07.

The record reflects that, in the early morning hours of September 29, 2007, Nicole Gant stood in her aunt's yard across the street from JJ's Bar in Gramercy, Louisiana, while talking to Eldridge Johnson and another man she did not know.[5] The man, later identified as Joe Brown, III, wore his hair in "cornrows" and had on black pants, a white shirt with black writing, and a black "do-rag." At some point, Gant took offense to a comment from Johnson, and left the two men to walk down the street to her mother's house.

Around the same time, Lanny Thomas and Freddie Williams were talking outside of JJ's Bar, when Paulette Bauman pulled up in a car. As Bauman exited her car, a "guy" approached Thomas and asked her for a light for his cigarette. Thomas lit his cigarette, and the man walked away. Almost immediately, however, the man turned back toward the trio with a gun in his hand and demanded that Bauman and Thomas hand over their purses. Bauman happened to be carrying jewelry in her purse, including her son's ring and earring and two of her own rings. After Thomas and Bauman complied, the man put the gun in Williams's face and demanded his wallet. After pilfering their property, the man ran away.

Officer Alexander Gerhold of the Gramercy Police Department spoke to Thomas, Bauman, and Williams, and each described the robber as a black male in his late twenties or thirties with a dark complexion, wearing a white t-shirt, dark colored jeans, a black do-rag or stocking cap on his head, with cornrows or braids in his hair. Officer Gerhold relayed this description to deputies who canvassed the area, but could not locate the suspect.

One day later, Detective Brett Forsythe of the St. James Parish Sheriff's Office was advised that the Gramercy Police Department received a tip from an anonymous caller that Joe Brown had committed

---

[5]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal. *State v. Brown*, 80 So.3d 547, 550-51 (La. App. 5th Cir. 2011); St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 11-KA-86, pp. 2-5, 11/15/11.

the armed robbery outside of JJ's Bar.  The next day, Detective Forsythe compiled a photographic lineup and showed it to Gant and the three victims.  Gant positively identified Brown as the individual who was standing with her and Johnson in her aunt's yard before the robbery.  Bauman and Thomas did not identify their assailant at the first viewing, because they were scared.  However, in separate interviews two days later, Bauman and Thomas positively identified Brown in the photographic lineup.  All three victims would later positively identify Brown at trial.

On October 3, 2007, Detective Forsythe obtained an arrest warrant for Brown, and other officers arrested Brown hiding in a closet in his girlfriend Candi Ross's trailer at 192 Emmett Court in Laplace. After searching the trailer with Ross's consent, the deputies found a bag of clothes matching those worn by the robber, along with two rings and an earring.  Based on information provided by Ross, the deputies recovered another ring form Royal Jewelers in Laplace where Ross had taken it for resizing.  All of the recovered jewelry later was determined to belong to Bauman.

Brown was tried before a jury on January 13 and 14, 2009, and was found guilty as charged on all three counts.[6]  At a January 11, 2010, hearing, the Trial Court denied Brown's motion for new trial.[7]  The Court then sentenced Brown to concurrent prison sentences of sixty years on each count without benefit of parole, probation, or suspension of sentence.[8]  On March 8, 2010, the Trial Court denied Brown's motion to reconsider the sentence.[9]

---

[6]St. Rec. Vol. 1 of 6, Trial Minutes, 1/13/09; Trial Minutes, 1/14/09; Verdict (Count 1), 1/14/09; Verdict (Count 2), 1/14/09; Verdict (Count 3), 1/14/09; St. Rec. Vol. 2 of 6, Trial Transcript, 1/13/09; St. Rec. Vol. 3 of 6, Trial Transcript (continued), 1/13/09; Trial Transcript, 1/14/09; St. Rec. Vol. 4 of 6, Trial Transcript (continued), 1/14/09.

[7]St. Rec. Vol. 1 of 6, Sentencing Minutes, 1/11/10; Motion for New Trial, 6/30/09; St. Rec. Vol. 4 of 6, Sentencing Transcript, 1/11/10.

[8]St. Rec. Vol. 1 of 6, Sentencing Minutes, 1/11/10.

[9]St. Rec. Vol. 1 of 6, Minute Entry, 3/8/10; St. Rec. Vol. 4 of 6, Hearing Transcript, 3/8/10.

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, Brown's appointed counsel argued that the Trial Court erred when it denied the motion to suppress the identifications and when it denied the motion to reconsider the sentence as excessive.[10]  Brown asserted *pro se* that he received ineffective assistance of counsel on three grounds:[11] (1) counsel failed to object and move for mistrial because of the prosecutor's comments during rebuttal argument that amounted to his personal knowledge of Brown's guilt and referenced evidence not presented at trial; (2) counsel failed to object and move for mistrial when the prosecutor intentionally mischaracterized his mother's testimony; and (3) counsel failed to object or move for mistrial when the State urged the jury to accept his mother's inconsistent testimony as evidence of his guilt.

On November 15, 2011, the Louisiana Fifth Circuit affirmed Brown's conviction finding that the first issue by counsel raised new grounds not presented to the Trial Court in the motion to suppress and was not properly preserved for appeal; alternatively, the Court held that the claim was meritless.[12]  The Court also held that counsel's excessive sentence issue and Brown's *pro se* ineffective assistance of counsel claim were meritless.  On its errors patent review, the Court found Brown's sentence to be indeterminate as to the gun enhancement and remanded the matter for resentencing.  On December 12, 2011, the Court denied Brown's request for rehearing.[13]

The Trial Court resentenced Brown on January 9, 2012, to serve concurrent prison sentences of sixty years on each count without benefit of parole, probation, or suspension of sentence and to serve concurrent prison sentences on the gun enhancement of five years on each count without benefit of parole,

---

[10]*Brown*, 890 So.3d at 547; St. Rec. Vol. 4 of 6, 5th Cir. Opinion, 11-KA-86, 11/15/11.

[11]*Id.*

[12]*Id.*

[13]*Brown*, 890 So.3d at 547.

probation, or suspension of sentence, with these sentences to run consecutively to the sentences on the three armed robbery counts.

In the meantime, on December 29, 2011, Brown sought review in the Louisiana Supreme Court where he asserted only one issue, that the Trial Court abused its discretion when it denied the motion to suppress the identification.[14] The Court denied Brown's writ application without stated reasons on April 20, 2012.[15]

Brown's conviction was final under federal law ninety (90) days later, on July 19, 2012, when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (time for filing for certiorari with the U.S. Supreme Court is included in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

On October 23, 2012, Brown signed and submitted an application for post-conviction relief to the Trial Court asserting the following grounds for relief:[16] (1) he was denied effective assistance of counsel when trial counsel failed to engage in pretrial investigation, specifically to interview witnesses and inquire as to how much the victims drank at the bar, or to file a motion to suppress evidence where the deputies seized evidence from the trailer without a warrant; and (2) the evidence was insufficient to obtain a conviction.

Following additional briefing,[17] in November of 2014, the Trial Court appointed counsel to represent Brown.[18] Brown continued to file pleadings *pro se*, including a supplemental brief on December

---

[14]St. Rec. Vol. 4 of 6, La. S. Ct. Writ Application, 12-KO-0027, 1/4/12 (dated 12/29/11); La. S. Ct. Letter, 2012-KO-27, 1/4/12.

[15]*State v. Brown*, 85 So.3d 1268 (La. 2012); St. Rec. Vol. 4 of 6, La. S. Ct. Order, 2012-KO-0027, 4/20/12.

[16]St. Rec. Vol. 4 of 6, Application for Post-Conviction Relief, 10/29/12 (dated 10/23/12).

[17]St. Rec. Vol. 4 of 6, Trial Court Order, 3/14/13; State's Answer, 5/31/13.

[18]*See* St. Rec. Vol. 5 of 6, Supplemental Brief, 1/30/15.

22, 2014, asserting that the verdict was defective and that his counsel was ineffective for failing to subpoena the recording of an anonymous 911 telephone call identifying him as the perpetrator and in failing to properly advise him about a plea deal offered by the State.[19] His appointed counsel also filed a supplemental brief with the Court on January 30, 2015.[20]

Pursuant to a mandamus order issued by the Louisiana Fifth Circuit,[21] the Trial Court issued an order on May 22, 2015, finding no merit in Brown's ineffective assistance of counsel claim based on failure to investigate and failure to file a motion to suppress under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984), and related state case law.[22] The Court also barred review of Brown's insufficient evidence and defective verdict claims because they should have been raised on appeal, citing La. Code Crim. P. art. 930.4(B) and (C). By separate order issued that same day, the Trial Court scheduled an evidentiary hearing to resolve whether Brown was offered a plea deal and knowingly rejected it.[23] The State also filed a supplemental answer to the remaining issue.[24]

At the hearing on July 13, 2015 at which Brown was represented by appointed counsel, the Trial Court dismissed the claim finding that Brown, by his own admission, was notified of the plea offer and that Brown failed to prove under *Lafler v. Cooper*, 566 U.S. 156 (2012), that his counsel was not effective

---

[19]St. Rec. Vol. 5 of 6, Motion to Supplement, undated - appears to have been submitted on 12/22/14 with other documents; *see also*, Reply to State's Answer, dated 12/22/14.

[20]St. Rec. Vol. 5 of 6, Supplemental Brief, 1/30/15.

[21]St. Rec. Vol. 5 of 6, 5th Cir. Mandamus Order, 15-KH-261, 5/18/15; 5th Cir. Writ Application, 15-KH-261, 4/27/15 (dated 4/17/15).

[22]St. Rec. Vol. 5 of 6, Trial Court Order, file stamped 5/27/15 (signed/dated 5/22/15).

[23]St. Rec. Vol. 5 of 6, Trial Court Order (2), 5/27/15 (signed/dated 5/22/15).

[24]St. Rec. Vol. 5 of 6, State's Supplemental Answer, 7/8/15.

6

for allowing him to reject the offer.[25]  On September 29, 2015, the Court issued a written order dismissing the claim.[26]

In the Louisiana Fifth Circuit, Brown sought review of the denial of his ineffective assistance of counsel claim based on counsel's failure to discover two police reports and failure to subpoena witnesses and the 911 tape, and failure to object to the improper verdict.  He also argued that the Trial Court erred when it denied his motions prior to the post-conviction evidentiary hearing to subpoena a witness and the 911 tape and appoint him counsel.[27]  He also argued that the Trial Court erred in denying the claim regarding the plea offer.  In denying Brown's writ application on December 11, 2015, the Court agreed with the Trial Court that Brown failed to meet his burden of proving ineffective assistance of counsel based on the plea offer.[28]  The Court also held that Brown's challenge to matters resolved by the Trial Court on May 22, 2015 were not timely filed, citing La. App. R. 4-3.  The Court also held that Brown failed to establish that he filed motions in the Trial Court that had not been addressed or that he requested the Trial Court rule on any pending motions, noting that Brown has been appointed counsel for the evidentiary hearing and that the Court found no basis to issue subpoenas requested by Brown at the hearing.

In his Louisiana Supreme Court filed January 3, 2016, Brown asserted that the Louisiana Fifth Circuit erred in finding that he failed to object to the Trial Court's restriction of the evidentiary hearing to one issue.[29]  He also claimed that the appellate court erred in holding that the Trial Court did not err in denying his prehearing motions for appointment of counsel and to subpoena the 911 tape and witnesses.

---

[25]St. Rec. Vol. 5 of 6, Hearing Transcript, p. 27, 7/13/15.

[26]St. Rec. Vol. 5 of 6, Trial Court Order, 9/29/15.

[27]St. Rec. Vol. 5 of 6, 5th Cir. Writ Application, 15-KH-673, 10/29/15 (dated 10/19/15).

[28]St. Rec. Vol. 5 of 6, 5th Cir. Order, 15-KH-673, 12/11/15.

[29]St. Rec. Vol. 6 of 6, La. S. Ct. Writ Application, 16-KH-100, 1/15/16 (dated 1/3/16); La. S. Ct. Letter, 2016-KH-

While that writ application was pending, Brown unsuccessfully pursued copy requests from the Trial Court and the Louisiana Fifth Circuit.[30] In the meantime, on June 20, 2016, Brown also filed a motion requesting that his post-conviction hearing be reopened for the Trial Court to rule on his prehearing motions for appointment of counsel and to subpoena witnesses and the tape recording.[31] The Trial Court denied the motion without stated reasons on June 29, 2016.[32] The Louisiana Fifth Circuit denied Brown's related writ application on July 28, 2016, finding no error in the Trial Court's ruling and noting that his post-conviction writ application was still pending before the Louisiana Supreme Court.[33] He did not seek review of this ruling.

On May 12, 2017, the Louisiana Supreme Court denied Brown's pending post-conviction writ application holding that Brown failed to establish ineffective assistance of counsel under *Strickland*, 466 U.S. at 668, and that he was not entitled to an evidentiary hearing on his other claims, citing La. Code Crim. P. art. 929(A) and *State ex rel. Tassin v. Whitley*, 602 So.2d 721 (La. 1992).[34]

## II.    Federal Habeas Petition

---

100, 1/15/16.

[30]*See* St. Rec. Vol. 6 of 6, 5th Cir. Application for Writ of Mandamus, 2/29/16 (dated 2/18/16); 5th Cir. Order, 16-KH-111, 4/6/16; Request for Copies, 4/18/16; Trial Court Order, 5/12/16; 5th Cir. Letter, 6/3/16; Trial Court Order, 10/17/16; Trial Court Order, 10/20/16; 5th Cir. Writ Application, 16-KH-689, 11/30/16 (dated 11/13/16); 5th Cir. Order, 16-KH-689, 12/14/16; Per Curiam Brief, 16-KH-689, 12/22/16; 5th Cir. Order, 16-KH-689, 12/28/16.  The record does not indicate that Brown sought review of any of these rulings in the Louisiana Supreme Court.

[31]St. Rec. Vol. 6 of 6, Motion to Reopen Post-Conviction Relief Hearing, 6/22/16 (dated 6/20/16).

[32]St. Rec. Vol. 6 of 6, Trial Court Order, 6/29/16.

[33]St. Rec. Vol. 6 of 6, 5th Cir. Order, 16-KH-402, 7/28/16; 5th Cir. Writ Application, 16-KH-402, 7/12/16 (dated 7/7/16).

[34]*State ex rel. Brown v. State*, 219 So.3d 321 (La. 2017); St. Rec. Vol. 6 of 6, La. S. Ct. Order, 2016-KH-0100, 5/12/17.

8

On July 17, 2017, after the correction of certain deficiencies, the clerk of this Court filed Brown's petition for federal habeas corpus relief in which he asserted the following grounds for relief:[35] (1) his trial counsel failed to investigate the witnesses and victims before trial; (2) the Trial Court erred by restricting his post-conviction evidentiary hearing to only one of his ineffective assistance of counsel claims regarding the advice on a plea offer; (3) the Trial Court denied him appointed counsel for the evidentiary hearing; and (4) the Trial Court denied him the right to subpoena witnesses for the evidentiary hearing.

The State filed an answer and memorandum in opposition to the petition asserting that three of Brown's claims are in procedural default and that he did not properly or timely exhaust review of his ineffective assistance of counsel claim, leaving it in procedural default.[36] In his reply to the State's response, Brown contends that his procedural default should be excused because of his lack of knowledge and good faith.[37]

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[38] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on June 13, 2017.[39] The threshold questions on habeas review under the amended statute are whether

---

[35]Rec. Doc. No. 3.

[36]Rec. Doc. Nos. 11, 11-1.

[37]Rec. Doc. No. 14.

[38]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes are effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[39]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper*

the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State contends that Brown's claims are in procedural default. Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338 & n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). In asserting this, the State seemingly confuses the elements of Brown's "unexhausted" ineffective assistance of counsel claim with those of his claims that the state trial court erred in denying his post-conviction motions for appointment of counsel and for subpoenas. The State's unreliable arguments appear to contradict that of the last reasoned opinion of the Louisiana Supreme Court, which denied relief citing *Strickland* and indicating that Brown had no right to an evidentiary hearing on his other claims, citing the powers of the state trial court to summarily dismiss post-conviction claims on the merits under La. Code Crim. P. art. 929 and *State ex rel. Tassin*. The holding of the Louisiana Supreme Court does not invoke or specifically rely on any state procedural bar. For these reasons, the State's procedural bar defense must be rejected. The Court, therefore, will address the substance of Brown's claims.

**IV.     Standards of a Merits Review**

---

*v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Brown's original deficient petition on June 28, 2017, when it was received, and opened the matter on July 17, 2017, when pauper status was granted. Brown dated his signature June 13, 2017, on the original complaint, which is the earliest date appearing in the record on which he could have presented his pleadings to prison officials for mailing to this Court.

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case

differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id*. "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## V. Effective Assistance of Counsel (Claim No. 1)

Brown alleges that his trial counsel was ineffective when she failed to investigate witnesses and the victims before trial. Even broadly construed, he does not provide any argument to this Court to

substantiate his claim. However, when this claim was raised in the state courts, Brown argued that his counsel should have interviewed the bartender to ascertain how much the victims drank that night. He also suggested that she should have interviewed the victims.

On post-conviction review, the state trial court on May 22, 2015, held that Brown failed to establish that his counsel's decision as to which witnesses to interview fell outside the ambit of sound trial strategy. In its December 11, 2015 order, the Louisiana Fifth Circuit declined to consider the dismissal of this claim by the state trial court finding that Brown did not seek timely review of that order, citing La. App. R. 4-3. Brown's muddled ineffective assistance arguments in the Louisiana Supreme Court, which arguably included reference to his counsel's failure to investigate, were ultimately dismissed as unproven under *Strickland*.

The issue of ineffective assistance of counsel is a mixed question of law and fact. *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). Thus, under the AEDPA, the question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The Supreme Court's holding in *Strickland*, 466 U.S. at 668, relied upon by the state court, is the appropriate standard for judging the performance of counsel. In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. *See Strickland*, 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir. 1992). In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *See Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability

sufficient to undermine confidence in the outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105. The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and §2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.*, at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). The federal courts must take a "highly deferential" look at counsel's performance under the *Strickland* standard through the "deferential lens of § 2254(d)." *Id.* (citing *Strickland*, 466 U.S. at 689, and quoting *Knowles*, 556 U.S. at 121 n.2).

Brown alleges that his counsel failed to adequately investigate his case, specifically a witness and the victims. When a habeas petitioner alleges a failure of his counsel to investigate, he "must allege with

specificity what the investigation would have revealed and how it would have altered the outcome of the trial.'" *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown. *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different."). Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed. *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting Report and Recommendation).

Similarly, it is well settled that "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" *Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir. 2003) (quoting *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978)). As determined by the state courts, Brown has failed to establish that any further investigation was needed or that the investigation or any other witness would have uncovered exculpatory evidence as he vaguely contends.

Brown suggested in the state courts that his trial counsel should have interviewed the bartender to determine how much the victims drank that night at the bar. He is not clear what exculpatory or impeachment information this would have disclosed, especially since the victims were standing outside of the bar and one victim had just driven up when he approached her. Brown also has not specified what information his trial counsel could have obtained from the bartender or victims that was not already available to the defense by some other means. Brown's generalized claims remain unsupported and conclusory which is not sufficient to establish a deficiency in or prejudice from his counsel's performance.

*Moawad*, 143 F.3d at 948; *Green v. Johnson*, 160 F.3d 1029, 1042 (5th Cir. 1998) ("Mere conclusory allegations in support of a claim of ineffective assistance of counsel are insufficient to raise a constitutional issue.").

Brown has not demonstrated that his counsel acted deficiently or prejudicially in investigating the case or aligning witnesses for trial. Brown, therefore, has not established that the state courts' denial or relief was contrary to or an unreasonable application of the *Strickland* standards. He is not entitled to relief on this issue.

## VI. <u>Errors in the Post-Conviction Proceeding (Claim Nos. 2, 3, and 4)</u>

Brown alleges that the Trial Court erred by restricting his post-conviction evidentiary hearing to only one of his ineffective assistance of counsel claims about the plea deal, by denying him appointed counsel for the evidentiary hearing, and by denying him the right to subpoena witnesses for the evidentiary hearing. The Louisiana Supreme Court denied him relief on review of these claims without specific reasons.

Despite his curious arguments, the record reflects that Brown in fact had appointed counsel during his state post-conviction proceedings from November of 2014 through the final resolution of his post-conviction application, including during the post-conviction evidentiary hearing held on July 13, 2015. Nevertheless, as noted by the State, it is a "longstanding rule that prisoners are not entitled to counsel during habeas proceedings and thus cannot state a claim for ineffective assistance during those proceedings." *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002) (citing *Coleman*, 501 U.S. at 752). Thus, Brown has no grounds to claim a denial of counsel. Further, even if Brown intended to argue, which he has not, that his appointed post-conviction counsel was ineffective, he is not entitled to assert such a claim in this habeas proceeding.

Equally settled in the law is the premise that federal habeas corpus relief cannot be granted to remedy errors which occurred in state post-conviction proceedings. As the United States Fifth Circuit Court of Appeals has explained, "[a]n attack on a state habeas proceeding does not entitle the petitioner to habeas relief in respect to his conviction, as it is an attack on a proceeding collateral to the detention and not the detention itself." *Nichols v. Scott*, 69 F.3d 1255, 1275 (5th Cir. 1995) (internal quotations omitted); *Morris v. Cain*, 186 F.3d 581, 585 n.6 (5th Cir. 1999) ("[O]ur circuit precedent makes abundantly clear that errors in state postconviction proceedings will not, in and of themselves, entitle a petitioner to federal habeas relief."); *Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997); *see also*, *Pitts v. Tanner*, No. 14cv3145, 2015 WL 10045174, at *23 (W.D. La. Dec. 14, 2015) ("To the extent that petitioner complains that the State Court denied his post-conviction application without holding an evidentiary hearing pursuant to Louisiana Code of Criminal Procedure article 929(A), that claim is not cognizable in this federal habeas corpus proceeding."), *adopted by* 2016 WL 554884 (W.D. La. Feb. 10, 2016).

The Fifth Circuit has also emphatically held that federal habeas courts "are without jurisdiction to review the constitutionality of [a petitioner's] state postconviction proceedings." *Kinsel v. Cain*, 647 F.3d 265, 273-74 (5th Cir. 2011). Thus, Brown has no basis under federal habeas law to assert his challenges to the state trial court's alleged errors during his post-conviction proceedings.

For these reasons, this Court is without authority under the AEDPA to consider or address any procedural infirmity alleged to have occurred in Brown's state court post-conviction review. He is not entitled to relief on his claims that the state trial court erred in conducting its post-conviction hearing and review.

## VII.  Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Joe Brown's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[40]

New Orleans, Louisiana, this 8th day of May, 2018.

                                     **KAREN WELLS ROBY**
                             **CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[40] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.